IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Smart Mortgage Centers, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21-cv-3606 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| Brian Noe, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This suit stems from the departure of two of plaintiff Smart Mortgage Centers, Inc.'s

("Smart Mortgage"), loan officers, defendants Brian Noe ("Noe") and Eileen Pruitt ("Pruitt"), to

work for one of Smart Mortgage's alleged competitors, defendant NEXA Mortgage, LLC

("NEXA"). *See* Sixth Am. Compl. ("SAC") ¶¶ 11, 17–199, ECF No. 1-1. In February 2020,

Smart Mortgage filed suit in state court against Noe; Pruitt; NEXA; and, later, against Secured

Mortgage Processors, LLC ("Secured Mortgage"), alleging that Noe and Pruitt downloaded

proprietary and confidential information from Smart Mortgage's customer database and violated

non-competition and non-solicitation clauses in various employment contracts. *See id. at* ¶¶ 17–

220. In December 2020, Smart Mortgage filed a parallel case in this federal court, but it

voluntarily dismissed the case without prejudice in June 2021 after the court entered a stay under

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), because a

parallel lawsuit was then pending in state court (not for long, as it turned out). Smart Mortgage

filed its sixth amended complaint in state court to add the two federal law claims it had pleaded

in federal court. *See* ECF No. 1-7 at PageID Nos. 1265–66; ECF No. 1-1. Defendants removed

the case to this court based on the presence of claims arising under federal law in the sixth

amended complaint.  Notice of Removal ¶ 5 (citing 28 U.S.C. § 1331).  Smart Mortgage has

filed a motion to remand for lack of subject matter jurisdiction, ECF No. 29, and defendants have

filed two separate motions to dismiss the sixth amended complaint for failure to state a claim,

ECF Nos. 20 and 24.  For the following reasons, the court determines that the case was properly

removed, dismisses Smart Mortgage's federal law claims, and exercises its discretion to

relinquish supplemental jurisdiction over plaintiff's state law claims, *see* 28 U.S.C. § 1367(c)(3).

## I.  Factual and Procedural Background

According to the sixth amended complaint, defendant Secured Mortgage provides

services to mortgage brokers, including NEXA, via an online software platform.  *See* SAC ¶¶ 3,

16, 200–207.  Smart Mortgage alleges that Michael Kortas, who is affiliated with NEXA, serves

as an "undisclosed principal" of Secured Mortgage.  SAC ¶ 216.

Smart Mortgage's sixth amended complaint has 15 counts.  Counts I–XIII assert state law

claims of breach of contract, tortious interference with perspective economic advantage,

conversion, unjust enrichment, respondeat superior, breach of fiduciary duty, and

misappropriation of trade secrets in violation of the Illinois Trade Secrets Act, 765 Ill. Comp.

Stat § 1065/1 *et seq*.  *See id.* at 28–47.  Count XIV alleges a claim under the civil enforcement

provisions of the federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq*.

*Id.* at 47–56.  In count XV, Smart Mortgage pleads a claim under the Computer Fraud and Abuse

Act ("CFAA"), 18 U.S.C. § 1030.  *Id*. at 56–58.  The court sometimes refers to Smart Mortgage's

DTSA and CFAA claims as its federal law claims.

### A.  State Court Litigation

Smart Mortgage initially filed suit in the Circuit Court of Will County, Illinois, on

February 20, 2020.  *See* Orig. compl. at PageID No. 239, No. 20-CH-292 (Will Cnty. Cir. Ct.,

Ill.) (ECF No. 1-5) ("Will County case").  It alleged a subset of the state law claims pleaded in

2

the SAC. *See id.* at PageID Nos. 241–49. In March 2020, the state court granted in part Smart Mortgage's motion for a temporary restraining order and ordered Noe, Pruitt, and NEXA to return certain information taken from Smart Mortgage's database.[1] *See* ECF No. 1-5 at PageID No. 350 (Mar. 4, 2022).

Smart Mortgage amended its complaint six times over the next year and a half. The first five amended complaints pleaded state law claims only (see below of a discussion of the sixth amended complaint). Each time Smart Mortgage amended its complaint, defendants moved to dismiss it.[2] And each time, plaintiff responded by seeking and obtaining leave to file an amended complaint. *See* ECF No. 1-5 through 1-7. The state court has not ruled on the sufficiency of any of plaintiff's complaints. The parties also conducted discovery during this period. *See* ECF No. 1-5 thru 1-7.

### B. The First Federal Case

On December 8, 2020, Smart Mortgage filed a one-count complaint in this federal court against the same defendants named in the Will County case. Compl., *Smart Mortg. Ctrs., Inc. v. Noe, et al.* [*First Federal Case*], No. 20-cv-7248, ECF No. 1 (N.D. Ill.) (Feinerman, J.). The factual allegations of the complaint largely tracked the allegations in Smart Mortgage's state court complaints. *See id.* at 2–5. On February 8, 2021, before an answer was filed, Judge Feinerman ordered Smart Mortgage to "show cause in writing why this case should not be stayed pursuant to the *Colorado River* doctrine in light of the pending proceedings in" the Will

---

1. A letter from the lawyer representing Noe, Pruitt and NEXA states that they complied with the temporary restraining order. *See* Letter, ECF No. 1-5 at PageID No. 408 (Mar. 11, 2020).

2 The state court set a briefing schedule on an anticipated motion to dismiss the fifth amended complaint, ECF No. 1-7 at PageID No. 1264, but as far as appears from this record (which does not contain the state court docket sheet), Smart Mortgage moved for leave to file its sixth amended complaint before a motion was filed.

County action.  Min. entry, *First Federal Case*, ECF No. 11; *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

Smart Mortgage filed its response on February 22, 2022.  It also amended its complaint to add a second count.  *See* Am. Compl., *First Federal Case,* ECF No. 13 (Feb. 18, 2021).  The two counts of the amended complaint asserted, respectively, a DTSA claim and a CFAA claim.  *Id.* at 8, 18.

After receiving a response brief from defendants, *First Federal Case*, ECF No. 24 (Mar. 11, 2021), Judge Feinerman issued a memorandum opinion and order on June 4, 2021, staying the case pending resolution of the Will County action.  *First Federal Case*, 2021 WL 2291073, at *6 (N.D. Ill. June 4, 2021) (in this record at ECF No. 30-1).  In describing the case's background, Judge Feinerman noted that the complaint in the federal case before him had been filed on the day before a state court mediation session.  *Id*. at *1 (citing *First Federal Case*, ECF No. 24 at 2).

Judge Feinerman explained that the *Colorado River* analysis proceeds in two steps.  *Id.* at *2.  The court asks whether the pending suits in federal and state court are parallel at step one. *Id.* (citing *Freed v. JPMorgan Chase Bank, N.A.,* 756 F.3d 1013, 1018 (7th Cir. 2014)).  Second, the court weighs ten factors to determine whether abstention from exercising federal jurisdiction is warranted.  *Id.* (citing same source).

Judge Feinerman first determined that there was "complete overlap" between the parties and factual allegations in the two suits, and the "only difference" was that "the claims in the state court suit arise under state law while the claims in this suit arise under federal law."  *Id*.  "But the gravamen of both suits [was] the same: Smart Mortgage alleges that Noe and Pruitt misappropriated its proprietary client information and are unlawfully using that information to

4

compete against it while employed at NEXA, and it seeks damages (to account for past misuse) and an injunction (to prevent future misuse)." *Id.* Thus, Judge Feinerman concluded that the two suits were parallel under *Colorado River*. *Id.*

Judge Feinerman then weighed the ten non-exclusive *Colorado River* factors and found that each factor either favored abstention or was neutral. *See id.* at *3–5. Regarding the tenth factor, the vexatious or contrived nature of the federal claims, the opinion states:

> This factor strongly favors abstention. Smart Mortgage's conduct as relates to this suit has been suspicious, to put it mildly. First, Smart Mortgage filed this suit the day before a settlement conference in the state court suit, which strongly suggests that its primary motivation was to gain leverage in the state court negotiations. That is an improper use of the federal judicial system.
>
> Next, there is no reason why Smart Mortgage could not have asserted its federal claims in the state court suit. . . .
>
> Finally, the CFAA claim in this suit—which has no analog in the state court suit and upon which Smart Mortgage bases its argument that a stay would be improper, was asserted only *after* the court raised the suggestion of *Colorado River* abstention. Again, Smart Mortgage's timing strongly suggests that injecting the CFAA claim into this case was just another tactic—this one to forestall abstention and a stay—rather than a good-faith assertion of a federal right.

*First Federal Case*, 2021 WL 2291073, at *5 (internal citations omitted).

The following language appears near the end of the *Colorado River* analysis: "Smart Mortgage would be well advised to dismiss this suit in short order, lest it exacerbate its existing exposure to possible sanctions." *Id.*

### C. *Dismissal of the First Federal Case, Removal, and Pending Motions*

Smart Mortgage voluntarily dismissed the first federal case without prejudice approximately two weeks (June 16, 2021) after Judge Feinerman issued his opinion staying the case. *First Federal Case*, ECF No. 31. Citing Judge Feinerman's opinion, Smart Mortgage then sought and obtained leave in the Will County action to amend its complaint to add its DTSA and CFAA claims in that court. *See* Mot. for Leave to File Sixth Am. Compl. ¶ 3, ECF No. 1-7 at

PageID Nos. 1265–66. After the sixth amended complaint was on file in state court, defendants removed the case to this court based on what is commonly called the federal question statute, 28 U.S.C. § 1331, and the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). Notice of Removal ¶¶ 5–6, ECF No. 1.

The parties then filed the pending motions. Based on Judge Feinerman's opinion, Smart Mortgage moves to remand the case to the state court and for an award of its costs and attorneys' fees. ECF No. 29. Defendants have filed two separate Federal Rule of Civil Procedure 12(b)(6) motions to dismiss the sixth amended complaint for failure to state a claim upon which relief can be granted–one motion to dismiss by Secured Mortgage, ECF No. 20, and one by defendants Noe, Pruitt, and NEXA, ECF No. 24.

## II. Motion to Remand

Smart Mortgage contends that the case must be remanded "because there is no subject matter jurisdiction and the Defendants should be collaterally estopped from moving for removal." Mem. Supp. Mot. to Remand 1, ECF No. 30. The general federal removal statute provides, "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). As the parties invoking this court's subject matter jurisdiction, defendants bear "the burden of showing the existence of federal jurisdiction." *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019) (citing *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012)).

In their notice of removal, defendants contend that this court has original jurisdiction over Smart Mortgage's federal law claims under 28 U.S.C. § 1331, which grants federal district courts original jurisdiction over suits "arising under" federal law. ECF No. 1 ¶ 5. "Under the longstanding well-pleaded complaint rule, . . . a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].' " *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (brackets in original) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)); *see also id.* (contrasting a well-pleaded claim with a counterclaim and an "anticipated defense"). Smart Mortgage expressly relies on the DTSA and CFAA as the basis for recovery in counts XIV and XV. *See* SAC 47, 56. Both claims therefore satisfy the well-pleaded complaint rule.

The first thirteen counts of the sixth amended complaint do not facially arise under federal law. They instead rely on Illinois law. *See id.* at 28–47. Defendants assert that this court has supplemental jurisdiction over these state law claims. Notice of Removal ¶ 6. If a court has original jurisdiction over at least one claim, it may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Included within this supplemental jurisdiction are state claims brought along with federal claims arising from the same episode." *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 597 (2018). As Judge Feinerman explained his *Colorado River* analysis, all of Smart Mortgage's state law and federal law claims completely overlap with regard to the facts and parties. *First Federal Case*, 2021 WL 2291073, at *2. Smart Mortgage does not argue otherwise here. After reviewing the allegations of counts I–XIII, this court concludes that that they arise out of the same case or controversy as Smart Mortgage's federal law claims.

7

Smart Mortgage does not contest the foregoing jurisdictional analysis of its sixth amended complaint. It contends, however, that Judge Feinerman's opinion applying the *Colorado River* doctrine requires remand for lack of subject matter jurisdiction. Per Smart Mortgage's reading of Judge Feinerman's opinion, the parties "had a full and fair opportunity to litigate subject matter jurisdiction," and "subject matter jurisdiction was already decided." Mem. Supp. Mot to Remand 4, 6. Though Smart Mortgage cites various cases setting out the black letter law of issue preclusion (a.k.a. collateral estoppel), it cites no case supporting the key premise of its argument, *i.e.*, that a decision to stay a case under *Colorado River* necessarily implies that the court issuing the stay lacks subject matter jurisdiction.

That premise conflicts with the *Colorado River* opinion itself, which says that it is concerned with "situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." 424 U.S. at 817. Thus, the abstention doctrine announced in *Colorado River* is framed as an exception to the rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). The qualifier "having jurisdiction" clarifies that subject matter jurisdiction is a separate issue, for only when a federal district court possesses "concurrent jurisdiction" may it consider whether to abstain "for reasons of wise judicial administration."[3] *Id.* at 817, 818; *see also, e.g.*, *Grdinich v. Plan Comm'n for Town of Hebron Ind.*, 2020 WL 3868704, at *2 (N.D. Ind. July 9, 2020) ("[A]n argument that a case should be dismissed or stayed under *Colorado River* is not an argument for a finding that there is no subject matter jurisdiction"). Thus, Judge Feinerman's *Colorado River*

---

3   Also, the Seventh Circuit has held that a party may waive the *Colorado River* doctrine, *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996), which is at odds with it being a non-waivable jurisdictional rule. *See Thomas-Wise v. Nat'l City Mortg. Co.*, 2015 WL 641770, at *2 (N.D. Ill. Feb. 13, 2015)).

abstention analysis presupposed the existence of subject matter jurisdiction in this court, and his decision to stay did not reject this court's original subject matter jurisdiction. *See Admin. Comm. v. Gauf*, 188 F.3d 767, 770–72 (7th Cir. 1999). Because this court has original jurisdiction over Smart Mortgage's federal law claims and supplemental jurisdiction over its state law claims, the case was properly removed, and the motion to remand is denied.

### III. Motions to Dismiss

A Rule 12(b)(6) motion tests the complaint's sufficiency rather than the merits of the case. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 n.4 (7th Cir. 2012). To satisfy federal notice pleading standards, "a plaintiff's complaint need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must contain sufficient allegations based on more than speculation to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 555 (citation omitted).

On a Rule 12(b)(6) motion, a district court must "accept all well-pleaded facts from the [complaint] as true and view them in the light most favorable to the plaintiff." *Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 973 n.2 (7th Cir. 2021) (en banc) (citing *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021)). This principle "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

The parties rely on exhibits attached to the sixth amended complaint in their briefing, and Smart Mortgage submits an affidavit, ECF No. 34-1, in response to Secured Mortgage's motion

to dismiss. The SAC's exhibits may be considered without converting defendants' motions to summary judgment motions because a defendant's Rule 12(b)(6) motion can be based "on only 'the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.' " *Kuebler v. Vectren Corp.*, 13 F.4th 631, 636 (7th Cir. 2021) (quoting *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)); *see also* Fed. R. Civ. P. 10(c).

Smart Mortgage states in its response to Secured Mortgage's motion to dismiss that it intends the accompanying affidavit to supplement the complaint without converting the motion to one for summary judgment. ECF No. 34 at 8. Unlike a defendant, a plaintiff "opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky*, 675 F.3d at 745 n.1 (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)) (other citations omitted). Secured Mortgage does not object to the court considering the affidavit, *see* Reply, ECF No. 40, and it will be considered.

### A. *Federal Defend Trade Secrets Act Claim (Count XIV)*

The Defend Trade Secrets Act creates a private cause of action for trade secret misappropriation: "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1); *see also id.* § 1836(c) (vesting federal courts with original jurisdiction over DTSA claims). To state a DTSA claim, plaintiff must plausibly allege: (1) ownership of a trade secret; and (2) actionable misappropriation as defined in the DTSA. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 573 (N.D. Ill. 2019) (citations omitted). Noe, Pruitt, and NEXA maintain that the SAC does not adequately allege both elements; Secured Mortgage challenges the misappropriation allegations

10

against it.  *See* ECF No. 25 at 16–21 (Noe, Pruitt, and NEXA); ECF No. 21 at 4–7 (Secured

Mortgage).

> *1.  The SAC plausibly alleges ownership of a trade secret.*

The DTSA defines a trade secret as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or
> engineering information, including patterns, plans, compilations, program devices,
> formulas, designs, prototypes, methods, techniques, processes, procedures,
> programs, or codes, whether tangible or intangible, and whether or how stored,
> compiled, or memorialized physically, electronically, graphically, photographically,
> or in writing if—
>
>> (A) the owner thereof has taken reasonable measures to keep such information
>> secret; and
>>
>> (B) the information derives independent economic value, actual or potential,
>> from not being generally known to, and not being readily ascertainable through
>> proper means by, another person who can obtain economic value from the
>> disclosure or use of the information.

18 U.S.C. § 1839(3).  The definition of trade secret in the Illinois Trade Secrets Act "is

materially identical."  *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540 (7th Cir. 2021)

(citing 765 Ill. Comp. Stat § 1065/2(d)).  "Under both statutes, whether information qualifies as a

trade secret is a question of fact that 'requires an ad hoc evaluation of all the surrounding

circumstances.' "  *Id.* (citing *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714,

723 (7th Cir. 2003)).

As Noe, Pruitt, and NEXA acknowledge, *see* Mem. Supp. Mot. to Dismiss 16–17, ECF

No. 25, the complaint "need only describe the information [subject to trade secret protection] and

efforts to maintain the confidentiality of the information in general terms."  *In re Dealer Mgmt.*

*Sys.*, 362 F. Supp. 3d at 573 (citing *Scan Top Enter. Co., Ltd. v. Winplus N. Am., Inc.*, 2015 WL

4945240, at *3 (N.D. Ill. Aug. 19, 2015).  "[T]rade secrets 'need not be disclosed in detail in a

complaint alleging misappropriation for the simple reason that such a requirement would result

in public disclosure of the purported trade secrets.' " *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 921 (N.D. Ill. 2016) (quoting *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014)). Nonetheless, "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated." *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992). Noe, Pruitt, and NEXA argue that, by defining the protected information as Smart Mortgage's entire customer database, the SAC defines the trade secret too broadly. *See* Mem. Supp. Mot. to Dismiss 17–18, ECF No. 25.

In response, Smart Mortgage points to numerous paragraphs of the SAC it contends contain "detailed allegations on this subject." Resp. 15–16, ECF No. 33 (citing SAC ¶¶ 28–51, 55–56, 71–73, 92–93, 110–11, 115, 125–27, 146–47, 162–76, 181–82, 192–93). The cited paragraphs describe how and what information Smart Mortgage gathers and stores in its client database, but they do not narrow the scope of what Smart Mortgage considers protected.

It is apparent that Smart Mortgage considers everything in its customer database to be subject to trade secret protection. *See* SAC ¶¶ 28–51, 55–56, 71–73, 92–93, 110–11, 115, 125–27, 146–47, 162–76, 181–82, 192–193. There is nothing inherently improper about designating an entire customer database as subject to trade secret protection, so long as the proponent of trade secret protection adequately alleges a basis for doing so. *See, e.g.*, *Am. Fam. Mut. Ins. Co. v. Roth*, 485 F.3d 930, 933–34 (7th Cir. 2007). If pleading that all of the "source code" for a piece of software is a trade secret satisfies federal pleading requirements, *Automed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001), then the SAC's more detailed allegations concerning the steps Smart Mortgage took to protect its customer database and why it considers

12

that information proprietary do as well.[4]  *See id.*; *Mission Measurement*, 216 F. Supp. 3d at 921;

*Cent. Chem. & Servs. Corp. v. Mueller*, 2008 WL 11517573, at *4 (N.D. Ill. Jan. 2, 2008)

(Gottschall, J.).

> ### 2. *Plaintiff has not plausibly alleged misappropriation.*

Noe, Pruitt, and NEXA argue that the SAC fails to raise a plausible inference of

misappropriation.  *See* Mem. Supp. Mot. to Dismiss 18–21, ECF No. 25.  Smart Mortgage cites

no legal authority in responding to this argument.  *See* ECF No. 36 at 16.  Smart Mortgage's

entire argument consists of two sentences–one defining the issue raised and another asserting that

"plaintiff alleged numerous and specific factual allegations on the subject"—followed by a string

of citations to the SAC.  *See id.*  Smart Mortgage essentially leaves it to the court to piece

together its theory of how the misappropriation requirement is satisfied from the SAC.  *See id.*

Smart Mortgage's failure to develop a legal argument in response to Noe, Pruitt, and NEXA's

arguments on this point constitutes waiver.  *See, e.g.*, *Refined Metals Corp. v. NL Indus. Inc.*,

937 F.3d 928, 935 (7th Cir. 2019) (finding plaintiff waived argument in the district court because

its "response to [defendant's] motion to dismiss did not so much as mention this argument, let

alone develop it. . . .  [C]iting a few cases that might (or might not) implicate a separate line of

argument is not good enough."); *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318

(7th Cir. 2016) ("The investors did not argue conversion in their second amended counterclaim

---

4  Noe, Pruitt, and NEXA contend that customer names and addresses in the database may not be
protectable because they can be gathered from public records.  *See* Mem. Supp. Mot. to Dismiss 17,
ECF No. 25; *see also Roth*, 485 F.3d at 934 (stating that information in customer lists may not be
protected as a trade secret if it "was known outside the [employer's] business and the list could be
readily reproduced [and] the information was available to all the employees of the firm" (alterations
in original) (citation omitted)).  These defendants argue that a justification for protecting customer
names must be pleaded, or no inference that they are confidential can be drawn.  The court cannot
accept this argument because it draws an impermissible inference from the SAC's allegations in
defendants' favor rather than in Smart Mortgage's.

or in their response to UCB's motion to dismiss; thus, the argument is waived." (citing *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 546 (7th Cir. 1994)).

On the other hand, Smart Mortgage develops an argument in response to Secured Mortgage's motion to dismiss its trade secret misappropriation claim. *See* ECF No. 34. As alleged in the SAC, Smart Mortgage bases its DTSA claim against Secured Mortgage on its allegations that information derived from Smart Mortgage's customer database was uploaded to Secure Mortgage's online customer relationship management ("CRM") software. *See* SAC ¶¶ 207–09, 217–19. Further, Smart Mortgage clarifies its scienter theory: "Plaintiff's Complaint does not allege mere 'routine mortgage processing' business practice as a basis for liability." ECF No. 34 at 9. Instead, Smart Mortgage bases its misappropriation claim on the conduct of Michael Kortas ("Kortas"), who is alleged in the SAC to be, upon information and belief, Secured Mortgage's "undisclosed principal." SAC ¶ 216; *see also* SAC ¶¶ 211–15. Kortas is also listed as one of NEXA's members. *See* SAC ¶ 203. Smart Mortgage sent NEXA a cease and desist letter regarding Noe on January 20, 2020. SAC ¶ 224. Based on that letter Smart Mortgage alleges, upon information and belief, that "Kortas knew or should have known that Smart Mortgage Center's client database was being misappropriated by Secured Mortgage Processing because he was made aware that Noe misappropriated Smart's confidential client data." SAC ¶ 217. According to the SAC and the affidavit attached to Smart Mortgage's response brief, Kortas requires all customer information be uploaded to his personal account in the Secured Mortgage CRM system rather than the individual loan officer's account. *See* ECF No. 34-1 ¶ 12; SAC ¶¶ 207–10.

Secured Mortgage's motion to dismiss focuses on the state of mind required for DTSA trade secret misappropriation. Plaintiff must plausibly allege that Secured Mortgage knew or had

"reason to know that the trade secret was acquired by improper means" when it acquired the alleged trade secret (customer information). 18 U.S.C. § 1839(5)(A). Alternatively, if (and this is not clear to the court from Smart Mortgage's response brief) Smart Mortgage bases its DTSA claim on Secured Mortgage's use of its proprietary information, then Secured Mortgage similarly must have known "or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who had used improper means to acquire the trade secret" when it used or disclosed the alleged trade secret. 18 U.S.C. § 1839(5)(B)(ii)(I). Either way, the actual or constructive knowledge, or reason to know, must be present when the trade secret is acquired, used, or disclosed. *See* 18 U.S.C. §§ 1839(5)(A), (B).

Seen in the light most favorable to plaintiff, the SAC does not specify when, if ever, Smart Mortgage's confidential information was uploaded to Secured Mortgage's CRM system or when, if ever, Secured Mortgage used or disclosed that information. *See* SAC ¶¶ 218–19. That is, the SAC does not plausibly allege that Secured Mortgage used, disclosed, or acquired a trade secret by improper means on or after January 20, 2020, the date Kortas received a cease and desist letter and was allegedly chargeable with knowledge of Noe's misappropriation. *See ibid.* Hence the SAC fails to state a plausible DTSA misappropriation of trade secrets claim against Secured Mortgage.[5] *See Growgenix Sols. LLC v. Roberts Int'l Agric. Dev., LLC*, 428 F. Supp. 3d 1236, 1243 (D. Utah 2019); *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1043–54 (D. Minn. 2019).

---

5   Additionally, while various theories can be imagined, Smart Mortgage neither pleads nor argues a legal theory by which Kortas's alleged knowledge can be imputed to Secured Mortgage. *See* ECF No. 34 at 6–7.

**B. *Computer Fraud and Abuse Act Claim (Count XV)***

The Computer Fraud and Abuse Act is primarily a "criminal anti-hacking statute," but it also contains a civil enforcement provision, 18 U.S.C. § 1030(g). *Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*, 810 F.3d 1075, 1079 (7th Cir. 2016). The CFAA's civil enforcement provision provides, subject to certain qualifications: "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief." § 1030(g). Defendants Noe, Pruitt, and NEXA argue that the SAC's allegations of damage or loss fail as a matter of law. *See* Mem. Supp. Mot. to Dismiss 23–25, ECF No. 25.

Smart Mortgage pleads that Noe and Pruitt violated the CFAA by "[w]ithout authorization or by exceeding authorized access . . . (a) obtaining certain information from [their] Smart Mortgage-authorized computing devices and/or the Smart Mortgage network; (b) obtaining copies of certain documents and files of value from the Smart Mortgage- issued computing devices and/or the Smart Mortgage network; (c) and deleting electronic files from the Smart Mortgage-issued computing devices and/or the Smart Mortgage network." SAC ¶ 467. The SAC then alleges damage or loss as follows:

> 469. Defendants Brian Noe and Eileen Pruitt intentionally and recklessly caused damage and loss . . . because their conduct impaired the integrity of Smart Mortgage's protected computers and required Smart Mortgage to expend resources . . . to investigate the foregoing misconduct, conduct forensic examination of the devices to ascertain the scope of Brian Noe and Eileen Pruitt's misconduct, and perform certain remedial measures required as a result of such misconduct.

> 470. As a further direct and proximate cause of the foregoing misconduct, Smart Mortgage has been damaged and suffered loss in an amount in excess of $5,000 to the extent the Brian Noe and Eileen Pruitt accessed, deleted, destroyed and copied electronic files containing Confidential Information and Trade Secrets belonging to Smart Mortgage for their personal use and/or that of Nexa Mortgage, LLC.

SAC ¶¶ 469–70.

The CFAA separately defines the terms "damage" and "loss." The "term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). The "term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11).

Noe, Pruitt, and NEXA rely on several cases interpreting the CFAA's damage or loss requirement on a motion to dismiss for failure to state a claim. *See* Mem. Supp. Mot. to Dismiss 23–25, ECF No. 25. For instance, in *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 769 (N.D. Ill. 2009), the court dismissed a CFAA claim because "[t]he only harm Motorola has alleged is the disclosure to a competitor of its trade secrets and other confidential information." "The plain language of the statutory definition" of damages, the court reasoned, "refers to situations in which data is lost or impaired because it was erased or because (for example) a defendant smashed a hard drive with a hammer." *Id.* (citing *Patrick Patterson Custom Homes v. Bach*, 586 F. Supp. 2d 1026, 1035 (N.D. Ill. 2008)); *see also Farmers Ins. Exch. v. Auto Club Group,* 823 F. Supp. 2d 847, 852 (N.D. Ill/ 2011).

Noe, Pruitt, and NEXA also cite *SBS Worldwide, Inc. v. Potts*, 2014 WL 499001, at *9 (N.D. Ill. Feb. 7, 2014). There, the court dismissed a CFAA claim for failure to plead a loss under § 1030(g). The court reasoned, "To be sure, assessing the extent of information illegally copied by an employee is a prudent business decision. But the cost of such an investigation is not 'reasonably incurred in responding to an alleged CFAA offense,' because the disclosure of

trade secrets, unlike destruction of data, is not a CFAA offense." *Ibid.* (citing *Farmers Ins. Exch.*, 823 F. Supp. 2d at 854).

Smart Mortgage cites no legal authority interpreting the CFAA's damage or loss requirement in its response. Nor does Smart Mortgage attempt to analyze the CFAA's text, structure, or history; cite any case construing the CFAA's damage or loss provision; or develop a legal argument for distinguishing the cases cited by Noe, Pruitt, and NEXA. *See* ECF No. 36 at 17–18. Indeed, Smart Mortgage's argument against dismissal of its CFAA claim is as skeletal and underdeveloped as its waived argument on its DTSA claims. *See id.* The court therefore finds that Smart Mortgage has waived its opposition to dismissal of its CFAA claim as well. *See Refined Metals*, 937 F.3d at 935; *United Cent. Bank*, 815 F.3d at 318. In the absence of any argument to the contrary, the court finds the cases discussed in the prior paragraph to be persuasive and adopts their reasoning as the basis for dismissing Smart Mortgage's CFAA claim.

## IV. Supplemental Jurisdiction Relinquished

Part II of this opinion concludes that this court had original jurisdiction over Smart Mortgage's federal law claims when this case was removed and supplemental jurisdiction over its state law claims. The dismissal of Smart Mortgage's federal law claims requires the court to revisit supplemental jurisdiction as a discretionary matter.

The supplemental jurisdiction statute states, "Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Under § 1367(c), a court "may decline to exercise supplemental jurisdiction over a claim" in four circumstances, including where, as here, "the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3).

18

As the statute's use of the word "may" suggests, whether to decline supplemental jurisdiction is a discretionary decision. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). "A federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). However, the Seventh Circuit has adopted "the sensible presumption that if the federal claims drop out *before trial*, the district court should relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (citing *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)); *accord Refined Metals,* 937 F.3d at 935–36. This presumption can be rebutted "when it is absolutely clear how the pendent claims can be decided." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 461 (7th Cir. 2020) (quoting *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).

For more than a year and a half before removal, this case was primarily pleaded and litigated under Illinois law in state court. As Judge Feinerman observed, Smart Mortgage injected claims under federal law into the case for what appear to be strategic reasons related to the litigation in state court. *See First Federal Case*, 2021 WL 2291073, at *1, 5. The record indicates that the state court is familiar with the parties and issues. *See* ECF No. 1-5 through 1-7. Among other things, the state judge issued a temporary restraining order denying some of the relief Smart Mortgage requested, presided over discovery disputes, and resolved several motions for leave to amend Smart Mortgage's complaints. *See, e.g.*, ECF No. 1-5 at PageID No. 350; ECF No. 1-6 at PageID Nos. 1049, 1168; ECF No. 1-7 at PageID No. 1264. In these circumstances, the presumption in favor of relinquishing supplemental jurisdiction is strong.

19

Accordingly, the court relinquishes jurisdiction over Smart Mortgage's state law claims and remands them to the state court from which they were removed.

### V. Conclusion

For the reasons stated, Smart Mortgage's motion to remand is denied because the court possessed original jurisdiction over this case when it was removed. Defendants' motions to dismiss the sixth amended complaint are granted in part. The federal law claims in counts XIV and XV are dismissed. In the exercise of its discretion, the court relinquishes supplemental jurisdiction over plaintiff's state law claims in accordance with 28 U.S.C. § 1367(c)(3) and remands this case to the Circuit Court of Will County, Illinois. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351–55 (1988).

Dated: March 21, 2022          _____/s/_____

                                            Joan B. Gottschall
                                            United States District Judge